**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | Dkt. No.: |
| v. | ) | Action Filed:   January 20, 2021 |
| | ) | Action Served:  January 22, 2021 |
| R.J. REYNOLDS TOBACCO COMPANY; | ) | |
| PHILIP MORRIS USA, INC.; LIGGETT | ) | |
| GROUP LLC; WALGREEN, CO., | ) | Jury Demand |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT R.J. REYNOLDS TOBACCO COMPANY,
<u>PHILIP MORRIS USA INC., AND LIGGETT GROUP LLC'S NOTICE OF REMOVAL</u>**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants R.J. Reynolds Tobacco Company ("Reynolds"), Philip Morris USA Inc. ("PM USA"), and Liggett Group LLC ("Liggett") (collectively, the "Manufacturer Defendants")[1] hereby give notice of removal of this action, captioned *James Jordan v. R.J. Reynolds Tobacco Company, et al.*, bearing case number 2021-L-000670, from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois. Pursuant to 28 U.S.C. § 1446(a), the Manufacturer Defendants provide the following statement of the grounds for the removal:

## BACKGROUND

1.      On January 20, 2021, Plaintiff James Jordan ("Plaintiff") filed a Complaint (attached hereto as Ex. 1) in the Circuit Court of Cook County, Illinois, alleging that he was diagnosed with laryngeal cancer in April 2016 as a result of smoking Kool brand cigarettes from 1971 until he quit in 2014. *See* Complaint at Law ("Compl.") ¶¶ 3, 9.

2.      Plaintiff brought this action, in part, against the Manufacturer Defendants, all of which manufacture, market, and sell cigarettes. Plaintiff asserts claims against Reynolds for negligence, strict liability, fraudulent concealment, and fraudulent misrepresentation. *See* Compl. (Counts I-III & V). Plaintiff asserts claims against all of the Manufacturer Defendants for conspiracy to commit fraudulent concealment and conspiracy to commit fraudulent misrepresentation. *See* Compl. (Counts IV & VI).

3.      None of the Manufacturer Defendants are Illinois citizens. Seeking to avoid federal jurisdiction, Plaintiff also asserts claims for negligence and strict liability against Walgreen Co. ("Walgreens"), an Illinois retailer. *See* Compl. (Counts VII-VIII).

---

[1]  Each of the Manufacturer Defendants has signed this Notice and consents to this removal in accordance with 28 U.S.C. § 1446(b)(2)(A).

4.     The thrust of Plaintiff's Complaint is that the Manufacturer Defendants allegedly conspired to conceal information about the dangerous health effects of smoking and the addictive nature of cigarettes; designed their cigarettes to be unreasonably dangerous; conspired to misrepresent the hazards of smoking to Plaintiff and the public through advertising; and engaged in a marketing campaign calculated to deceive Plaintiff and the public as to the health hazards and addictive nature of smoking.

5.     In support of these claims, Plaintiff sets forth hundreds of specific allegations against Reynolds and the other Manufacturer Defendants.  For example, Plaintiff devotes over twelve pages, and 38 paragraphs, to a series of "historical allegations" directed *solely* to the Manufacturer Defendants.  *Id.* ¶¶ 16-53.

6.     Although Plaintiff incorporates those historical allegations into the "Negligence" and "Strict Liability" claims he asserts against Walgreens (*see id.* ¶¶ 158, 189), none of them even mention Walgreens.  Indeed, the Complaint does not include ***any*** factual allegations that Walgreens was involved in any way in the design or manufacture of cigarettes.  Before reaching the actual causes of action directed at Walgreens, the only fact implicating Walgreens is that Plaintiff "smoked cigarette products that he purchased from" Walgreens.  *Id.* ¶¶ 4, 8.[2]  Even when Plaintiff finally gets around to asserting strict liability and negligence claims against Walgreens (Counts VII-VIII), the Complaint consists entirely of conclusory statements and selective quotations from documents that, on their face, do not support Plaintiff's theory.  *See id.*

---

[2] Plaintiff's allegations directed solely at the Manufacturer Defendants within Counts I-VI (*see* Compl. ¶ 54 (negligence); *id.* ¶ 66 (strict liability); *id.* ¶ 83 (fraudulent concealment); *id.* ¶ 106 (conspiracy to commit fraudulent concealment); *id.* ¶ 119 (fraudulent misrepresentation); *id.* ¶ 149 (conspiracy to commit fraudulent misrepresentation)) similarly do not include any facts concerning Walgreens or its conduct.

¶¶ 158-192.  At bottom, Plaintiff's Complaint alleges merely that Plaintiff purchased a lawful product (cigarettes) from a lawful, non-manufacturer retailer of those products (Walgreens).

7.      Under well-settled case law applying the doctrine of "fraudulent joinder," Plaintiff's attempt to avoid federal diversity jurisdiction by naming Walgreens is improper. Plaintiff does not have a "reasonable possibility" of prevailing on his claims against Walgreens under Illinois law, and Walgreens has been fraudulently joined.  Indeed, a court in this District dismissed nearly identical claims *with* prejudice against Walgreens in a case filed by the same plaintiff's counsel with allegations that mirror the allegations against Walgreens here.  *See Clay v. Philip Morris USA Inc., et al.*, No. 1:18-cv-03549 (N.D. Ill. Feb. 20, 2020) (Norgle, J.), Ex. 2 ("*Clay* Order II").[3]  Accordingly, the Manufacturer Defendants remove this case to federal court because there is complete diversity between Plaintiff and all of the properly joined Manufacturer Defendants.

---

[3] The Manufacturer Defendants recognize that other courts in this District have found similar allegations sufficient under this standard and have granted motions to remand to state court.  *See, e.g.,* Order, *Mitchell v. Philip Morris USA Inc.*, No. 18-C-7739 (Apr. 24, 2019) (Blakey, J.); Order, *Smith v. Philip Morris USA Inc.*, No. 18-C-06396 (Sept. 30, 2019) (Chang, J.); Order, *Andersen v. Philip Morris USA Inc.*, No. 19-C-5812 (Jan. 28, 2020) (Lee, J.); Order, *Stone v. Philip Morris USA Inc.*, No. 20-C-5198 (Oct. 26, 2020) (Kennelly, J.); Memorandum Opinion, *Dispenza v. Philip Morris USA Inc.*, No. 20-C-5190 (Dec. 2, 2020) (Kocoras, J.); Order, *Jones v. Philip Morris USA Inc.*, No. 20-CV-3349 (Feb. 16, 2021) (Dow, J.).  However, the Manufacturer Defendants maintain, for the reasons discussed herein, that the decision in *Clay* should be followed here because it correctly applied the law.  Moreover, the Manufacturer Defendants are advancing a new argument not previously considered by any of these courts.  *See infra* Sect. I.C.1.i.

## VENUE AND JURISDICTION

8.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 93, 1391, 1441(a), and

1446(a) because the Circuit Court of Cook County, Illinois, where the Complaint was filed, is a

state court within the Northern District of Illinois.

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because

(1) there is complete diversity of citizenship between Plaintiff and all properly joined

Defendants; (2) the amount in controversy exceeds $75,000, exclusive of interests and costs; and

(3) all other requirements for removal have been satisfied.

## ARGUMENT

### I.      THERE IS COMPLETE DIVERSITY OF CITIZENSHIP BETWEEN PLAINTIFF AND THE MANUFACTURER DEFENDANTS

10.     There is complete diversity here because Plaintiff is a citizen of Illinois and the

Manufacturer Defendants are each citizens of states other than Illinois.  *See infra* Sect. I.A.-I.B.

The citizenship of Walgreens—the only non-diverse Defendant—should be ignored for purposes

of determining jurisdiction because, as set forth more fully below, Walgreens is fraudulently

joined.  *See infra* Sect. I.C.

### A.      Plaintiff Is A Citizen Of Illinois

11.     The Manufacturer Defendants are informed and believe that Plaintiff is now, and

was at the time of the filing of the Complaint and this Notice of Removal, and at all intervening

times, domiciled in and a citizen of the state of Illinois.  *See* Compl. ¶¶ 1, 12.

### B.      None Of The Manufacturer Defendants Is A Citizen Of Illinois

12.     For purposes of diversity jurisdiction, a corporation is "a citizen of every State

and foreign state by which it has been incorporated and of the State or foreign state where it has

its principal place of business[.]"  28 U.S.C. § 1332(c)(1).  A limited liability company is a

citizen of every state in which its members are citizens. *See Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006). When an LLC is composed of parent LLCs or partnerships, those entities "must be traced through however many layers of partners or members there may be." *Meyerson v. Harrah's E. Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002).

13. Applying these principles, none of the Manufacturer Defendants is, or was at the time of filing of the Complaint or this Notice or Removal, or at any intervening time, a citizen of Illinois.

14. Defendant Reynolds is a corporation organized under the laws of North Carolina with its principal place of business in North Carolina. Compl. ¶ 5; Aff. of Charles Garner (Ex. 3). Thus, Reynolds is a North Carolina citizen.

15. Defendant PM USA is a corporation organized under the laws of Virginia with its principal place of business in Virginia. Compl. ¶ 6; Aff. of Richard Jupe (Ex. 4). Thus, PM USA is a Virginia citizen.

16. Defendant Liggett is a limited liability company organized under the laws of Delaware with its principal place of business in North Carolina. Compl. ¶ 7. Liggett's sole member is VGR Holding LLC, a Delaware limited liability company with its principal place of business in Florida. Aff. of Victoria Spier Evans (Ex. 5). VGR Holding LLC's sole member is Vector Group Ltd., a Delaware corporation with its principal place of business in Florida. *Id.* Thus, Liggett is a citizen of Delaware and Florida.

**C.    Walgreens' Citizenship Should Be Ignored Because Plaintiff Fraudulently Joined It**

17. Where—as here—the face of a complaint shows a lack of complete diversity, removal based on diversity jurisdiction is nonetheless proper where the non-diverse defendant is fraudulently joined. *See Int'l Bhd. of Teamsters Local 734 Health & Welfare Tr. Fund v. Philip*

*Morris, Inc.*, No. 97 C 8113, 1998 WL 242130 (N.D. Ill. May 8, 1998), *aff'd on other grounds*, 196 F.3d 818 (7th Cir. 1999) (applying fraudulent joinder doctrine and denying remand in suit brought against cigarette manufacturers and Illinois distributors); *In Re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 692 F. Supp. 2d 1025, 1031 (S.D. Ill. 2010), *aff'd sub nom. Walton v. Bayer Corp.*, 643 F.3d 994 (7th Cir. 2011); *see also* Order at 2, *Clay v. Philip Morris USA Inc., et al.*, No. 1:18-cv-03549 (N.D. Ill. Nov. 6, 2018) (Norgle, J.), Ex. 6 ("*Clay* Order I") (denying remand in a tobacco case alleging similar claims against Walgreens because, at the time, plaintiff's allegations were "not supported by well-pleaded facts, and the Court is unable to discern a reasonable inference of misconduct by the Retail Defendants from the Complaint"). Fraudulent joinder occurs when, "after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos v. Naas Food, Inc.*, 959 F. 2d 69, 73 (7th Cir. 1992).

18. To determine whether a defendant is fraudulently joined, the Court "must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Poulos*, 959 F. 2d at 73; *Clay* Order I at 1-2 (citing *Poulos*). However, "[t]he heavy burden placed upon [defendant] to establish fraudulent joinder does not mean [the court] must accept blindly whatever plaintiff may assert no matter how incredible or contrary to the overwhelming weight of evidence." *In re Diet Drugs (Phentermine, Fenfluramine, and Dexfenfluramine) Prods. Liab. Litig.*, 352 F. Supp. 2d 533, 537 (E.D. Pa. 2004).[4] In such a case, removal jurisdiction is established if, in light of the evidence presented,

---

[4] *See also Hernandez v. Home Depot, USA, Inc.*, No. 05 C 5963, 2006 WL 1647438, at *2 (N.D. Ill. June 5, 2006) (defendants satisfy their burden to establish fraudulent joinder when they "offer [ ] evidence which proves to a reasonable probability that federal jurisdiction exists" (citation omitted)).

construing all disputed questions of fact in Plaintiff's favor, the Court finds that "there is no *reasonable* basis for predicting that plaintiffs might establish liability in their . . . claim against the in-state defendants." *Id.* (emphasis added).

19.     As set forth more fully below, Plaintiff has no reasonable possibility of prevailing on his negligence and strict liability claims against Walgreens for four independent reasons. First, Plaintiff's strict liability claim fails under Illinois' applicable statute of repose, 735 ILCS 5/13-213(b) (1987), because the repose period has expired.  Second, Plaintiff's strict liability claim also fails because it is barred by the Illinois "Seller's Exception Statute," 735 ILCS 5/2-621(a), which mandates dismissal when the statute's requirements have been satisfied and no statutory exception applies.  Third, Plaintiff has not set forth specific facts tying Walgreens to the wrongful conduct alleged in the Complaint.  *See Teamsters*, 1998 WL 242130, at *5. Specifically, Plaintiff's Complaint (i) does not allege any factual basis for finding that Walgreens designed or manufactured cigarettes; (ii) does not allege any factual basis for finding that Walgreens owed or breached a duty of care to Plaintiff; (iii) does not allege any factual basis for finding that Walgreens had any non-public or superior knowledge of the health risks of smoking; and (iv) does not allege any factual basis for finding that Walgreens proximately caused Plaintiff's alleged injuries.  Finally, Plaintiff's Complaint asserts preempted theories of liability.

20.     The fundamental deficiencies in Plaintiff's claims against Walgreens are readily apparent from Judge Norgle's orders in a similar tobacco case, *Clay v. Philip Morris USA Inc., et al.*, No. 1:18-cv-03549.  In *Clay*, the same Manufacturer Defendants removed the case to this District on the same basis asserted here:  that the retailer defendant, Walgreens, was fraudulently joined for purposes of destroying diversity.  Judge Norgle agreed, and ultimately denied plaintiff's motion to remand the case finding that plaintiff's allegations against Walgreens were

"not supported by well-pleaded facts."  *Clay* Order I at 2.  The *Clay* plaintiff was then given the opportunity to amend her complaint, and filed a new complaint which mirrors the allegations against Walgreens at issue in this case.  *Compare Clay* Amend. Compl. ¶¶ 118-147 (attached hereto as Ex. 7) with Compl. ¶¶ 158-192 (adding only a conclusory statement in ¶ 187 addressing proximate cause).

In particular, as discussed in detail *infra* at paragraphs 38-40, the *Clay* plaintiff added allegations regarding communications between a Walgreens manager and individuals connected to the tobacco industry in 1977, Walgreens' 1993 request for indemnification from cigarette manufacturers, communications in 2008 between Walgreens and one of the Manufacturing Defendants in connection with a marketing pitch for smokeless tobacco, and various public information from Walgreens' *current* website about the health risks of smoking.  Those allegations are nearly identical to the allegations Plaintiff makes here.

The *Clay* court granted Walgreens' motion to dismiss the amended complaint in its entirety, with prejudice, as to both the negligence and strict liability claims.  *See generally Clay* Order II.  The court found that the new allegations concerning Walgreens were insufficient to establish that "Walgreens knew or should have known of the dangers and defects of cigarettes in a way that was *superior t*o the general public."  *Id.* at 3 (emphasis added).  The court also found that the amended complaint failed to establish any facts sufficient to maintain a strict liability claim against Walgreens and that none of the exceptions under the Illinois "Seller's Exception Statute" applied, as the plaintiff had acknowledged that Walgreens did not participate in the design, manufacture, or creation of the tobacco products at issue.  *Id.*  The same reasoning applies equally here; Plaintiff has no reasonable possibility of prevailing on the claims against Walgreens under Illinois law.

21.     Courts do not hesitate to find fraudulent joinder when a plaintiff fails to set forth essential allegations against a non-diverse defendant.  *See, e.g.*, *Elrod v. Bayer Corp.*, No. 19-cv-06048, 2020 WL 4284416, at 5 (N.D. Ill. July 27, 2020) (in a products liability action filed against diverse manufacturers and one individual, non-diverse sales representative, the court found that the non-diverse defendant was fraudulently joined where the plaintiff failed to plead sufficient facts to demonstrate that the defendant owed a duty to the plaintiff as required to establish a negligent misrepresentation claim); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (finding cigarette distributors were fraudulently joined because plaintiffs failed to plead sufficient facts to state a claim for negligence and failure to warn under Ohio law); *In Re Yasmin*, 692 F. Supp. 2d at 1035 (finding fraudulent joinder because "no factual basis can be drawn from plaintiffs' complaint for the entirely general and conclusory charge that [non-diverse defendants] knew or had reason to know of the risks"); *Texas Ujoints, LLC v. Dana Holding Corp. Mach. Serv.*, No. 13-C-1008, 2013 WL 6230675, at *7-9 (E.D. Wis. Dec. 2, 2013) (finding fraudulent joinder where plaintiff "failed to plead any facts describing any aspect of" the non-diverse defendant's culpability); *First Merchs. Tr. Co. v. Wal-Mart Stores E., LP*, 630 F. Supp. 2d 964, 968 (S.D. Ind. 2008) (finding fraudulent joinder where the complaint made "no allegations of wrongdoing or of any other basis for obtaining relief from" the non-diverse defendant).

22.     Moreover, courts have determined that "generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to demonstrate that the defendant was not fraudulently joined."  *Howard v. CitiFinancial, Inc.*, 195 F. Supp. 2d 811, 818 (S.D. Miss. 2002), *aff'd and remanded sub nom. Ross v. Citifinancial, Inc.*, 344 F.3d 458 (5th Cir. 2003).  Thus, fraudulent joinder exists where a plaintiff merely asserts factual allegations against defendants

collectively, and fails to tie any facts specifically to the non-diverse defendants. *See, e.g.*, *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 391-93 (5th Cir. 2000) (affirming lower court's decision that tobacco distributors were fraudulently joined as to the conspiracy claim because plaintiff's claims were "entirely general" and it was "evident" that usage of the word "'defendants'" throughout the complaint "could not be referring to the 'Tobacco Wholesalers.'").

23.     For these reasons, other courts in this District have dismissed Illinois retailers and distributors and retained cases under diversity jurisdiction in smoking and health cases brought against out-of-state cigarette manufacturers.  As discussed *supra*, paragraph 20, *Clay* was also removed to federal court on the basis that the defendant retailer, Walgreens, was fraudulently joined.  After denying remand and giving plaintiff a chance to amend, plaintiff added new allegations against Walgreens, including allegations relating to public information on Walgreens' website and communications that took place in the 1970s and 1990s, which are likewise included in Plaintiff's Complaint here.  *Clay* Order II at 3.  The court found that these conclusory allegations were insufficient to demonstrate Walgreens possessed knowledge superior to the general public and establish a claim for negligence.  *Id.*  As such, the case remained in federal court, and Walgreens was dismissed from the case with prejudice.  *Id.* at 4.

24.     Similarly, in *Teamsters*—another case from this District—the plaintiffs brought a pair of companion products liability actions against tobacco product manufacturers and distributors alleging causes of action for, *inter alia*, strict liability and negligence.  1998 WL 242130, at *1-2.  Although the plaintiffs alleged certain wrongful conduct against the defendants generally, they did not include any factual allegations that implicated the distributors in particular.  *Id.* at *4-5 (the court observed that it "scoured the complaints looking for any factual assertions that ties the distributor defendants into the wrongdoing alleged in the complaints, but

to no avail"). The *Teamsters* court found that the plaintiffs' "bald assertions" as to the distributors' alleged conduct, including the distributors' alleged awareness of the health risks of the tobacco products, were "wholly conclusory" and "[did] not tie the distributor defendants into the allegedly wrongful acts described in the complaints." *Id.* at *4-5. The court further noted that, "[a]lthough the plaintiffs refer to the 'defendants' generally, it defies logic to include the distributors with the rest of the defendants in the general factual allegations directed at all defendants." *Id.* at *3. Finding the plaintiff's allegations woefully insufficient, the court held that the distributor defendants had been fraudulently joined and denied the plaintiff's motion to remand. *Id.* at *5, 10. As explained further below, this case likewise calls for the federal jurisdiction the Manufacturing Defendants here invoke.

**1.  Plaintiff Has No Reasonable Possibility of Prevailing on His Strict Liability Claim.**

25.  Plaintiff has no reasonable possibility of prevailing on his strict liability claim against Walgreens for two distinct reasons:  (1) it is barred by the statute of repose, and (2) Illinois' Seller Exception Statute necessitates dismissal of Walgreens, a non-manufacturer defendant.

**i.  Plaintiff's Strict Liability Claim Against Walgreens Is Barred By The Statute of Repose.**

26.  Plaintiff has no reasonable possibility of prevailing on his strict liability claim because that claim is barred by Illinois' applicable statute of repose as a matter of law.[5]  The

---

[5] It makes no difference that the statute of repose is an affirmative defense; courts often find that there is no reasonable possibility of prevailing under the fraudulent joinder standard based on affirmative defenses.  *See LeBlang Motors, Ltd. v. Subaru of America, Inc.*, 148 F.3d 680 (7th Cir. 1998) (affirming district court's finding that the plaintiff fraudulently joined the non-diverse defendants where the plaintiff's claims against those defendants were barred by the statute of limitations); *In re Yasmin and Yaz (Drospirenone) Mktg.*, 870 F. Supp. 2d 587, 591, 597 (S.D. Ill. 2012) (finding non-diverse defendant pharmacy was fraudulently joined where there was no reasonable possibility of success on plaintiff's claims against the defendant based on the learned intermediary doctrine); *Hill v. C.R. Bard, Inc.*, 582 F.

statute of repose for "product liability action[s] based on the doctrine of strict liability in tort"

provides that such actions are barred if they are not "commenced . . . within 12 years from the

date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale,

lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period

expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff." 735

ILCS 5/13-213(b) (1987).[6] The statute applies to "any cause of action accruing on or after

January 1, 1979, involving any product which was in or entered the stream of commerce prior to,

on, or after January 1, 1979." 735 ILCS 5/13-213(g). Crediting the allegations in his complaint,

which is the only information Manufacturer Defendants have about the case at this time,

Plaintiff's claims accrued in or around 2016 when he was diagnosed with laryngeal cancer.

Compl. ¶ 9 (alleging Plaintiff was diagnosed with laryngeal cancer on or shortly after April 19,

2016, and learned "sometime thereafter" it was related to cigarette smoking). The statute of

repose therefore applies. *See Olson v. Owens-Corning Fiberglas Corp.*, 198 Ill. App. 3d 1039,

1044 (Ill App. 1st Distr. 1990).

27.     Under Illinois law, when the product that allegedly caused the injury is

repetitively purchased and used, the repose period begins running upon the ***initial*** sale of the first

product unit that allegedly contributed to the plaintiff's harm. *See Hadley v. AstraZeneca*

*Pharm. PLC*, No. 18-CV-1068-JPG-DGW, 2018 WL 4491184, at *6 (S.D. Ill. Sept. 19, 2018)

(holding repose period began to run on date plaintiff first took medicine); *Schultz v. Keene Corp.*,

729 F. Supp. 609, 613 (N.D. Ill. 1990) (concluding statute of limitations began running on date

---

Supp. 2d 1041, 1049 (C.D. Ill. 2008) (finding non-diverse defendant fraudulently joined where there was
no possibility of success based on the statute of limitations affirmative defense).

[6] In 1995, the Illinois legislature amended the statute of repose to include all theories of product liability,
including negligence." *Masters v. Hesston Corp.*, No. 99 C 50279, 2001 WL 567736, at *2 n.1 (N.D. Ill.
May 23, 2001). "However, the Illinois Supreme Court subsequently declared this legislation
unconstitutional." *Id.* (citing *Best v. Taylor Mach. Works*, 689 N.E.2d 1057 (Ill. 1997)). "Therefore, the
original statute stands … and does not apply to negligence claims." *Id.*

of plaintiff's first exposure to asbestos). Starting the repose period upon the initial sale of the first product is consistent with the Legislature's goal of "terminat[ing] the possibility of liability after a defined period [of time.]" *Zimmerman v. Abbott Labs., Inc.*, 189 Ill. App. 3d 744, 747 (Ill. 1st Dist. 1989).

28. The plain language of Illinois's statute of repose provides that the triggering of the repose period is keyed to the first unit of a product. Specifically, both prongs of the statute are triggered by "the . . . *first* sale, lease or delivery," emphasizing the earliest transaction— which in a multi-unit case involves the first product to have contributed to the plaintiff's injury. 735 ILCS 5/13-213(b) (emphasis added). In addition, the statute looks to the "first sale, lease or delivery . . . of *any* product unit that is claimed to have injured or damaged the plaintiff," thus making clear that expiration of the repose period with respect to even a single product unit is enough to bar the claim. *Id.* (emphasis added).

29. In this case, that means the repose period has expired under both of the prongs of the statute of repose: according to the allegations in his Complaint, Plaintiff only smoked one brand of cigarettes, Kool and began smoking those cigarettes in 1971, Compl. ¶ 3, meaning the repose period expired in 1981, at the latest. Plaintiff's strict liability claim therefore cannot succeed.

30. It matters not that the statute of repose in this case cuts off Plaintiff's strict liability claim before it accrued. Indeed, that is one of the signature features of a statute of repose: "[A] repose statute is a substantive statute, extinguishing any right of bringing the cause of action, regardless of whether it has accrued." *Highland v. Bracken*, 202 Ill. App. 3d 625, 632 (Ill. App. 4th Distr. 1990). This effect of statutes of repose is most noticeable where, as here, the disease in question takes a long time to develop. *See Olson v. Owens-Corning Fiberglas Corp.*,

198 Ill. App. 3d 1039, 1043 (Ill. App. 4th Distr. 1990) (applying statute of repose to bar claim for asbestosis); *Zimmerman v. Abbott Labs., Inc.*, 189 Ill. App. 3d 744, 748-49 (Ill. 1st Distr. 1989) (same, for claim of cancer attributed to ingestion of DES by plaintiff's mother). Nevertheless, courts rightly adhere to the text of the statute, refusing to "redraft legislation that [was] . . . vigorously debated and necessarily subjected to a difficult balance of competing interests." *Olson*, 198 Ill. App. 3d at 1043. Just so here, where the text forecloses Plaintiff from succeeding on his strict liability claim against Walgreens.

ii.     **Plaintiff's Strict Liability Claim Against Walgreens Is Subject To Dismissal Under The Illinois Seller's Exception Statute**

31.     Plaintiff has no reasonable possibility of prevailing on his strict liability claim against Walgreens for the independent reason that the claim is subject to dismissal under the Illinois "Seller's Exception Statute," 735 ILCS 5/2-621.[7] The Seller's Exception Statute provides that a court "shall order dismissal" of a strict liability claim against a non-manufacturer defendant once the non-manufacturer defendant provides "the correct identity of the manufacturer of the product allegedly causing injury, death or damage." §§ 2-621(a)-(b).[8] "[T]he language of section 2-621 makes dismissal of the 'nonmanufacturer' mandatory when that party complies with the requirements of the section." *Lamkin v. Towner*, 563 N.E. 2d 449,

---

[7] In *Teamsters*, although the removing defendants cited the Seller's Exception Statute in support of their fraudulent joinder argument, the court concluded that it did not need to reach the question of whether that statute barred the claims asserted against the distributors because, as in this case, it was "clear" from the lack of specific factual allegations asserted against the distributors that plaintiffs failed to assert a "colorable claim against the distributor defendants." 1998 WL 242130, at *4.

[8] The Illinois Supreme Court has recognized that the Seller's Exception Statute was enacted to protect innocent nonmanufacturing defendants who have not created or contributed to an alleged defect and allow them to defer liability upstream to the manufacturer. *Cherry v. Siemans Med. Sys., Inc.*, 565 N.E.2d 215, 218 (Ill. 1990). Thus, the court has held that the statute "should be construed liberally to provide a nonmanufacturing defendant, who is without personal fault, with a means to escape expensive litigation and obtain a dismissal at whatever point the manufacturer becomes known to the plaintiff." *Id.* at 220.

459 (Ill. 1990). Here, the requirements of the statute have been satisfied because Walgreens, a mere seller, executed an affidavit on February 11, 2021, that identifies that "the cigarettes at issue in this lawsuit were manufactured by R.J. Reynolds Tobacco Company." Aff. of Dale Johnson at ¶¶ 6 (Ex. 8). Indeed, there can be no question about the correct identity of the cigarette manufacturers, because Plaintiff's Complaint names them as defendants. *See Clay* Order II at 4 (finding Walgreens' affidavit confirming tobacco products at issue were those of the manufacturer defendants required dismissal of the claim).

32.     Plaintiff has utterly failed to allege specific facts triggering any of the statutory exceptions to the Seller's Exception Statute. Under the Seller's Exception Statute, a plaintiff can avoid dismissal of his claims against a non-manufacturing defendant by showing the non-manufacturing defendant: (1) "exercised some significant control over the design or manufacture of the product;" (2) created the purported defect; or (3) had "actual knowledge" of the purported defect. § 2-621(c). None of those exceptions apply here. *See Clay* Order II at 4.

33.     It is undisputed that Walgreens does not design or manufacture cigarettes, and Plaintiff's Complaint does not allege otherwise. *See* Compl. ¶ 8; *see also* Aff. of Dale Johnson ¶¶ 9-11, 13 (Ex. 8) (confirming that Walgreens does not play a role in the design or manufacture of cigarettes); *see also* Aff. of Richard Jupe ¶¶ 7-11 (Ex. 4); Aff. of Charles Garner ¶¶ 7-11 (Ex. 3); Aff. of Victoria Spier Evans ¶¶ 7-11 (Ex. 5).

34.     It is also undisputed that Walgreens did not create the purported defect in the cigarettes Plaintiff smoked. In fact, in his strict liability claim against Reynolds, Plaintiff alleges the cigarettes designed and manufactured by Reynolds reached him "in a condition without substantial change from that in which such products were when within the possession of Defendant." Compl. ¶ 71.

35.     And, lastly, Plaintiff's Complaint does not allege specific facts showing that

Walgreens had actual knowledge of the purported defect.  Under the "actual knowledge"

exception, a plaintiff must allege that the non-manufacturer defendant was "at fault" in failing to

disclose the "actual knowledge" in a way that "actually contributed in some way to the injury."

*Murphy v. Mancari's Chrysler Plymouth Inc.*, 887 N.E. 2d 569, 576-77 (Ill. 1st Dist. 2008)

(explaining that a plaintiff must show "that a presumptively dismissed defendant had actual

knowledge of the unreasonably dangerous nature of the physical characteristics/design of the

product, not just actual knowledge that the physical characteristics/design existed").  Although

Plaintiff asserts in a conclusory fashion that Walgreens had "actual knowledge," the Complaint is

devoid of any factual support showing how Walgreens supposedly gained this purported

knowledge and how Walgreens was "at fault" in failing to disclose that "actual knowledge" in a

way that "actively contributed in some way to the injury."  *Murphy*, 887 N.E.2d at 576-77.  On

the contrary, Walgreens did not have actual knowledge, above and beyond the general public, of

any alleged defect in the Manufacturer Defendants' cigarettes.  Aff. of Dale Johnson ¶¶ 14-19

(Ex. 8).[9]  As Walgreens' executive, Mr. Johnson, confirms in his affidavit, Walgreens had no

knowledge of any defect in the cigarettes it sold, and had no knowledge regarding the design,

composition, use, or effects of cigarettes other than what was available to the general public.  *Id.*

Indeed, in his Complaint, Plaintiff concedes the general public was, in fact, aware of the dangers

---

[9] In *Dispenza*, the district court stated that "the affidavits are not entirely inconsistent with Plaintiffs' allegations . . . ."  Memorandum Opinion at 14.  However, the affidavits are unequivocal—Walgreens did not have actual knowledge of the alleged defects, and thus, did not have actual knowledge that these alleged defects rendered cigarettes unreasonably dangerous.  *See* Aff. of Dale Johnson ¶¶ 14-17 (Ex. 8); *see also* Aff. of Richard Jupe ¶¶ 10-11 (Ex. 4); Aff. of Charles Garner ¶¶ 10-11 (Ex. 3); Aff. of Victoria Spier Evans ¶¶ 10-11 (Ex. 5); *see also Murphy*, 887 N.E.2d at 576-77.  And courts must treat an unrebutted affidavit as true under the Illinois Seller's Exception Statute, which the *Dispenza* court (and the *Jones* court after it) failed to do.  *See Lamkin v. Towner*, 138 Ill. 2d 510, 532-33 (1999) ("Well-alleged facts within an affidavit must be taken as true when they are not contradicted by conteraffidavits.").

of cigarettes. *See* Compl. ¶ 163 ("Cigarettes are dangerous and well recognized to cause the death of fifty percent of consumers who smoke them.").

36.　　　Plaintiff seeks to show that Walgreens was at fault in selling cigarettes despite special knowledge of their danger, so as to fall within the aforementioned exception to the Seller's Exception Statute. But that gambit suffers from a fatal flaw: Plaintiff's Complaint, as in *Clay*, rests entirely on conclusory allegations that fail to set out any specific facts showing that Walgreens in fact had the superior knowledge on which Plaintiff's theory depends. *See Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 792 (N.D. Ill. 2010) (citing *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F. 3d 750, 754 (7th Cir. 2002)) ("where a plaintiff . . . relies upon the document to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim"); *Woodall v. Village of Washington Park, Illinois, Woodall v. Vil. of Washington Park, Illinois*, No. 02-CV-0597-DRH, 2006 WL 1131906, at *2 (S.D. Ill. Apr. 27, 2006) (granting motion to dismiss on the basis that exhibits attached to plaintiff's complaint contradicted allegations in the complaint). In the end, as Judge Norgle found, these allegations do not "plausibly establish that Walgreens knew or should have known of the dangers and defects of cigarettes in a way that was superior to the general public." *Clay* Order II at 3.

37.　　　Indeed, in significant respects, the documents Plaintiff cites in support of his claims actually contradict Plaintiff's allegations. Plaintiff first cherry-picks excerpts from Walgreens' webpage to assert that Walgreens had superior knowledge about the chemicals in cigarette smoke and the health risks of smoking. *See* Compl. ¶¶ 168, 170. This argument fails. Walgreens' webpage cannot show that Walgreens had superior knowledge as compared to the public because the webpage is a document that is itself open to the public and that provides information contained in other publicly-available sources. Although Plaintiff's Complaint

quotes only selective excerpts from Walgreens' webpage, the webpage actually discloses that the information it provides is drawn from seven *publicly-available* and widely-known documents produced by the federal government (Surgeon General, Center for Disease Control, National Health Service, etc.). *See* Ex. 9 (complete copy of Walgreens' webpage).[10] Moreover, Plaintiff alleges no specific facts showing that Walgreens had this information at a time when, for example, (1) the general public did not; (2) Plaintiff did not; and (3) Plaintiff purchased cigarettes from Walgreens. Plaintiff's allegations concerning Walgreens' website are thus irrelevant to Plaintiff's claims and cannot support evasion of the Seller's Exception Statute.

38.     Plaintiff next asserts that a 1977 communication between a Walgreens manager and the Tobacco Institute (a public relations trade group created by certain cigarette manufacturers, *see, e.g.*, Compl. ¶¶ 173, 175) shows that Walgreens had a "close" relationship with the tobacco industry and thereby gained specific knowledge about cigarettes that was not publicly known.[11] But neither the letter that Plaintiff carefully excerpts in paragraphs 174, 175 and 177 of his Complaint (Ex. 1), nor the internal Tobacco Institute memorandum that Plaintiff selectively quotes in paragraph 176, support that conclusory assertion—much less that Walgreens had some secret knowledge concerning a risk of laryngeal cancer. On the contrary,

---

[10] Even though Plaintiff's Complaint quotes only certain selectively excerpted portions of Walgreens' webpage, this Court can and should consider the complete copy of Walgreens' webpage. *See Rosenblum v. Travelbyus.com Ltd.*, 299 F. 3d 657, 661 (7th Cir. 2002) (holding that if documents are "referred to in the plaintiff's complaint and are central to his claim . . . [s]uch documents may be considered by a district court . . . ."); *accord Gerritsen v. Warner Bros. Entm't, Inc.*, 116 F. Supp. 3d 1104, 1119 (C.D. Cal. 2015) ("To the extent the documents have been incorporated by reference in the first amended complaint . . . the court can consider each document *in its entirety* and not rely solely on the excerpts plaintiff pleads.").

[11] As with Walgreens's webpage, the Court can and should consider this letter and the other documents discussed here in its entirety, and attached as Exhibit 10. *See Rosenblum*, 299 F.3d at 661; *Gerritsen*, 116 F. Supp. 3d at 1119. Plaintiff himself concede that the documents are publicly available and "can be accessed through the UCSF Library and Center for Knowledge Management tobacco document archive located at https://www.industrydocumentslibrary.ucsf.edu/tobacco/." Compl. ¶ 174 n. 2.

the letter and memorandum show only that a member of the Tobacco Institute and a Walgreens manager discussed *publicly available* information produced and published by the Tobacco Institute.[12]  None of the cited documents even hint at the disclosure of secret information about the design or manufacture of cigarettes, or the health risks of smoking.  Much less do the documents provide the specific facts needed to avoid application of the Seller's Exception Statute and state a claim against Walgreens under Illinois law.

39.     Plaintiff next baldly asserts that Walgreens must have known secret information about the health risks of smoking because "it sought indemnification from each of the major cigarette manufacturers for future lawsuits against it" after it "became aware in 1993 of litigation involving the tobacco industry's defective cigarette products."  Compl. ¶ 177.  But the act of seeking indemnification *based on public litigation* in no way suggests that Walgreens was privy to information that was not publicly available—much less information concerning the sort of injury allegedly suffered by Plaintiff.  Indeed, that Walgreens sought indemnification only after litigation shows that it was *not* earlier aware of non-public information concerning the risks of smoking—or else it would have sought indemnification earlier.

40.     Finally, Plaintiff cites a 2008 marketing pitch regarding smokeless tobacco in which Reynolds stated that "[n]o tobacco product has been shown to be safe and without risks" and "[r]educing the diseases and deaths associated with the use of cigarettes serves public health goals."  Compl. ¶ 178.  But Plaintiff has alleged no facts, much less specific facts, to suggest that

---

[12]  Specifically, in the letter, the Walgreens manager discussed his lack of knowledge regarding the tobacco industry and asked for a "booklet" that the Tobacco Institute disseminated to the public.  Ex. 10. The Tobacco Institute memorandum, dated a day after the letter, merely confirms Walgreens' lack of information concerning the tobacco industry, and that the Tobacco Industry might therefore send some "literature about the Institute as well as the PR project which [the Tobacco Institute] had promoted."  Ex. 11.  the memorandum simply recounts the earlier correspondence, without adding any new information concerning the information that was discussed.

the general public did not know this information in 2008.  Nor could he make any such allegation, because this information has been the public health community's message—and has even been included on some of the Manufacturer Defendants' websites—since at least 2000.  *See* Compl. ¶ 109 (alleging Manufacturer Defendants denied the "actual health harms and addictive nature of smoking cigarettes" until the year "2000"); *see also, e.g.*, https://www.rjrt.com/tobacco-use-health/.  Thus, this 2008 document neither shows, nor even supports, Plaintiff's bare conclusion that Walgreens "had knowledge of the defective and unreasonably dangerous nature of the cigarettes"—either in 2008 or at any earlier time—"that far exceeded the knowledge or awareness of the health risks of smoking known by reasonable consumers."  Compl. ¶ 165.

41.    The bottom line is that Plaintiff's Complaint rests on entirely conclusory allegations and fails to set forth *any* specific facts showing that Walgreens had superior knowledge of the health risks of smoking as compared to the public.  As courts have recognized, "a complaint that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do."  *Texas Ujoints*, 2013 WL 6230675, at *7 (internal quotations omitted); *see also Coyne*, 183 F. 3d at 493 (where plaintiffs did not allege that the tobacco retailers "knew of the so-called nicotine defect any sooner than members of the general public," plaintiffs failed to state a claim for both negligence and failure to warn under state law); *Hoidas v. Wal-Mart Stores, Inc.*, No. 09-C-7409, 2010 WL 1790864, at *2 (N.D. Ill. Apr. 30, 2010) (finding fraudulent joinder because the "mere formulaic recitation that [non-diverse defendant] owed a duty . . . is not sufficient to meet the pleading standard"); *Toulon v. Continental Casualty Co.*, 877 F. 3d 725, 734 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)) (finding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements" are insufficient to state a claim for relief). Indeed, a court in this district recently reaffirmed the insufficiency of conclusory statements in establishing what a party knew or should have known. *See Elrod*, 2020 WL 4284416, at *4. Rather, the court required clear facts to support the allegation. *See id.* (finding fraudulent joinder in a products liability action where the plaintiff's allegations against the non-diverse sales representative defendant "failed to allege any *facts* suggesting that [the defendant] knew or should have known anything about the truth or falsity of [the manufacturer defendants'] statements—[plaintiff] merely provides legal conclusions" (emphasis in original)). As the *Clay* court held, these same barebones allegations and documents do not "plausibly establish that Walgreens knew or should have known of the dangers and defects of cigarettes in a way that was superior to the general public." *Clay* Order II at 3.

42.     Finally, the Seller's Exception Statute also provides that a plaintiff may, at any time, "move to vacate the order of dismissal and reinstate" the distributor if it did not identify the correct manufacturer or if the manufacturer is judgment proof, the manufacturer is not amenable to service of process, or the manufacturer is unable to satisfy any judgment or reasonable settlement. § 2-621(b)(1)-(5). Although some courts have relied on the conditional nature of § 2-621 dismissals as a basis for remanding to state court, *see, e.g.*, *Scheinman v. BMW of N. Am., LLC*, No. 10 C 4848, 2010 WL 3937489, at *3 (N.D. Ill. Sept. 30, 2010), numerous other courts have declined to follow that view because it conflicts with the Seventh Circuit's approach to fraudulent joinder and diversity jurisdiction. For example, in *Steel v. Ford Motor Co.*, No. 11 C 00460, 2011 WL 1485380, at *4 (N.D. Ill. Apr. 19, 2011), the court stressed that the Seventh Circuit's "fraudulent joinder" test calls for a prediction "premised on the *current* allegations, not on speculation that 'some facts might turn up'" (quoting *Poulos*, 959 F.2d at 74). The court

noted that "[a] possibility need not be premised on much, but a *reasonable* possibility does require some *reason* to believe that [the distributor] will re-appear in the case." *Id.* (emphasis in original). Because the plaintiff in *Steel* did not allege that the Illinois distributor was covered by any exception, and the manufacturer defendant was not judgment-proof, the court concluded that the possibility of recovery against the Illinois distributor was too slim to justify treating the Illinois distributor as a properly-named non-diverse defendant. *Id.* at *4-5; *see also Whelchel*, 850 F. Supp. 2d at 934 ("To allow the conditional nature of a § 2-621 dismissal to defeat diversity jurisdiction in all cases where a distributor is non-diverse would change the *Poulos* 'reasonable possibility' test into an 'any possibility' test."); *Xiaofa Shi v. Am. Honda Motor Co., Inc.*, No. 11 C 2682, 2011 WL 5403618, at *2 (N.D. Ill. Nov. 8, 2011) ("it is impossible to square *Poulos*' 'reasonable possibility' test with a categorical bar on treating defendants dismissed pursuant to § 2-621 as fraudulently joined. There is no reason why a district court cannot engage in the same 'act of prediction' in cases involving § 2-621 dismissals as it does with every other type of involuntary dismissal." (internal citation omitted)). *See also Clay* Order I at 3 (rejecting plaintiff's argument "that satisfying the general rule in § 2-621, alone, cannot be the basis for a finding of fraudulent joinder because dismissal under this section is conditional, and that non-diverse defendants can be rejoined late," and noting that "Plaintiff's interpretation of § 2-621 would . . . , in effect, abrogate[e] § 2-621(a)-(b)").[13]

---

[13] In *Mitchell*, the district court acknowledged that the Illinois Seller's Exception Statute requires that a non-manufacturer defendant be dismissed where the statute has been satisfied. Order at 5-6, *Mitchell v. Philip Morris USA Inc., et al.*, No. 1:18-cv-07739 (N.D. Ill.) (Blakey, J.). Nevertheless, the *Mitchell* court reached the opposite conclusion from the *Clay* court and granted the plaintiff's motion to remand, in part, based on the court's conclusion that dismissal of the retailer defendants under § 2-621 was "merely conditional." *Id.* at 6-7. The Manufacturer Defendants respectfully submit that the *Mitchell* court's finding on the conditional nature of a dismissal pursuant to the Seller's Exception statute is directly contrary to *Steel* and other precedent in this jurisdiction. *See Steel*, 2011 WL 1485380, at *4; *Xiaofa Shi v. Am. Honda Motor Co., Inc.*, No. 11 C 2682, 2011 WL 5403618, at *2 (N.D. Ill. Nov. 8, 2011). Indeed, as the *Steel* court recognized, if the *Mitchell* court's finding were correct, it would preclude a court from *ever* finding that a retailer had been fraudulently joined "no matter the remoteness of the possibility of

43.     Plaintiff has not alleged that the Manufacturer Defendants are judgment proof, not amenable to service of process, or unable to satisfy any judgment or reasonable settlement, *see* § 2-621(b)(1)-(5), and thus there is no reasonable possibility that Walgreens would be reinstated as a defendant in the case under this provision of the Seller's Exception Statute.  *See Steel*, 2011 WL 14853380, at *4 (plaintiff cannot defeat fraudulent joinder based on speculation that manufacturer might someday go bankrupt).

44.     In sum, Plaintiff's Complaint does not and cannot allege any specific facts—as opposed to conclusory allegations—to suggest that Walgreens:  (1) participated in the design or manufacture of cigarettes, (2) had actual knowledge of the alleged defect in the product, or (3) created the alleged defect in cigarettes, such that they are subject to exception under § 2-621(c).  Nor is there any reasonable possibility that Walgreens would be reinstated as a defendant in the case under this provision of the Seller's Exception Statute.

### 2.     Plaintiff Has No Reasonable Possibility of Prevailing On His Negligence Claim

45.     As in *Clay* and *Teamsters*, Plaintiff's Complaint is devoid of *any* specific facts that allege (much less plausibly allege) that Walgreens (i) knew of any defect in cigarettes before the general public or was in any way involved in the design or manufacture of the cigarettes; (ii) had a fiduciary relationship with Plaintiff that could give rise to any duty that would not otherwise have existed; or (iii) took any particular action that proximately caused Plaintiff's alleged injuries.  As the court stated in *Clay*, in order to assert a negligence claim against a non-manufacturer retailer, "Plaintiff must allege that Walgreens had knowledge *superior* to the general public of the dangers and defects of cigarettes."  *Clay* Order II at 3 (emphasis added).

---

recovery against the non-diverse Illinois distributor"—a result which simply "does not square with . . . *Poulos*."  *Steel*, 2011 WL 1485380, at *5.

Plaintiff's factual allegations here are almost identical to the amended complaint in *Clay*, *see supra* ¶ 20, and as in *Clay* they are patently insufficient to establish the requisite superior knowledge that would support a negligence claim. Thus, Plaintiff has no reasonable possibility of success on his negligence claim against Walgreens.[14]

### i. Plaintiff Has Not And Cannot Allege That Walgreens Designed Or Manufactured Cigarettes

46. To have a reasonable possibility of success on a negligence claim under Illinois law, Plaintiff must plead specific facts establishing (1) "the existence of a duty owed," to live up to some standard of care, (2) "a breach of that duty," and (3) "an injury proximately caused by that breach." *Corwin v. Connecticut Valley Arms, Inc.*, 74 F. Supp. 3d 883, 888 (N.D. Ill. 2014) (citing *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1153-54 (Ill. 2011)). Thus, a "key" feature of a negligence claim is "the concept of fault," so that (for example) a retailer of a product cannot be held liable in negligence if the plaintiff fails to plead specific facts showing that the retailer is at fault in some way. *Smith v. Phoenix Seating Sys., LLC*, 894 F. Supp. 2d 1088, 1098 (S.D. Ill. 2012).

47. Although the crux of Plaintiff's Complaint is that the cigarettes he smoked were defective and unreasonably dangerous, Plaintiff does not and cannot allege that Walgreens ever designed or manufactured ***any*** cigarettes.[15] As in *Teamsters*, the alleged wrongful conduct "directly relates to the manufacturers, their trade associations, and their research groups." *Teamsters*, 1998 WL 242130, at *3; *see also* Compl. ¶¶ 5-7 (alleging Manufacturer Defendants

---

[14] Indeed, the remand orders, in *Stone*, *Dispenza*, *Anderson*, and *Dowdle*, do not even address plaintiffs' negligence claim against Walgreens. *See* Order, *Stone v. Philip Morris USA Inc.*, No. 20-C-5198 (Oct. 26, 2020) (Kennelly, J.); Memorandum Opinion, *Dispenza v. Philip Morris USA Inc.*, No. 20-C-5190 (Dec. 2, 2020) (Kocoras, J.); Order, *Andersen v. Philip Morris USA Inc.*, No. 19-C-5812 (Jan. 28, 2020) (Lee, J.); Order, *Dowdle v. Philip Morris USA Inc.*, No. 18-C-3354 (Feb. 19, 2019) (Alonso, J.).

[15] Furthermore, Walgreens has provided an affidavit confirming that it was not involved in the design, manufacture, packaging, or labeling of cigarettes. Aff. of Dale Johnson (Ex. 8).

engaged in the "design, manufacture, advertisement, marketing, distribution, and/or sale of []
cigarette products"). By contrast, Plaintiff alleges only that Walgreens "distributed and/or sold"
cigarette products. Compl. ¶ 8. Plaintiff's negligence claim against Walgreens thus cannot rest
on any "fault" in the design or manufacture of cigarettes.

**ii. Plaintiff's Complaint Does Not Allege Specific Facts
Supporting His Claim That Walgreens Had Superior
Knowledge Of The Health Risks Of Cigarettes**

48. Because Walgreens had nothing to do with the design or manufacture of
cigarettes, Plaintiff attempts to manufacture duty and fault by alleging that Walgreens had
superior knowledge, above and beyond the general public, of the health risks of smoking but
failed to warn its customers of those risks. *See, e.g.*, Compl. ¶¶ 8, 161, 164, 165, 166 (alleging
Walgreens "distributed and/or sold cigarettes" even though it "knew or had reason to know of
the dangers" associated with smoking and even though it "had a broad range of knowledge about
the components of cigarette smoke" and "knew or should have known" that cigarettes were
"defective"). But as previously discussed, and as already determined by a court within this
District, none of the publicly available documents cited by Plaintiff show Walgreens possessed
any superior knowledge above and beyond the general public of the health risks of cigarettes;
indeed, Plaintiff has failed to even "allege facts that Walgreens plausibly had actual knowledge
of the alleged defects." *See supra* ¶ 20; *see also Clay* Order II at 4.[16] For that reason alone,
Plaintiff's claims against Walgreens have no reasonable possibility of success.

---

[16] A comparison of this case to other cases in which courts found an exception to the Illinois Seller's
Exception Statute confirms that Plaintiff's Complaint falls far short. For example, unlike the non-
manufacturer defendants in *Kopitke v. Depuy Orthopaedics Inc.*, No. 11-cv-912, 2011 WL 856865, at *3
(N.D. Ill. Mar. 8, 2011), and *Cochran v. Smith & Nephew Inc.*, No. 16-1121, 2016 WL 4923505, at *4
(C.D. Ill. Sep. 15, 2015), there is *no* allegation of specific facts showing that Walgreens was in a "unique
position" to warn the Manufacturing Defendants of the purported defects in cigarettes. In *Kopitke*, the
plaintiff specifically alleged the non-manufacturing defendant in fact warned the manufacturer of a defect
on several occasions, such that the non-manufacturing defendant not only had "actual knowledge of the

### 3. Plaintiff Has Not Pleaded Specific Facts Establishing Proximate Cause

49.     Plaintiff also fails to allege *any facts*—let alone specific facts—supporting

proximate causation, which is a required element of both the negligence and strict liability

claims. *See Corwin v. Connecticut Valley Arms., Inc.*, 74 F. Supp. 3d 883, 888 (N.D. Ill. 2014);

*see also Kleen v. Homak Manufacturing Co., Inc.*, 321 Ill. App. 3d 639, 641 (1st Dist. Mar. 30,

2001) ("The concept of proximate cause is the same in negligence and strict liability in tort.")

(internal citation omitted); *Walker v. Macy's Merchandising Group, Inc.*, 288 F. Supp. 3d 840,

855 (Dec. 19, 2017) (citing *Kleen*, 321 Ill. App. 3d at 641).   Under Illinois law, the element of

proximate cause contains two separate and distinct requirements that a plaintiff must plead and

prove:  cause-in-fact and legal cause. *Turcios v. DeBruler Co.*, 32 N.E.3d 1117, 1124 (Ill. 2015).

To satisfy the cause-in-fact requirement, a plaintiff must plead specific facts showing either:

(1) that his injury would not have occurred "but for" the defendant's allegedly tortious conduct;

or (2) that "the defendant's conduct . . . was a material element and a substantial factor in

bringing the event about." *Id.*; *see also Krywin v. Chicago Transit Authority*, 938 N.E.2d 440,

447 (Ill. 2010) ("Conduct is a material element and a substantial factor if, absent the conduct, the

injury would not have occurred.").

50.     Here, Plaintiff makes only conclusory assertions that if Walgreens did not sell

products it allegedly knew were dangerous, Plaintiff would not have started smoking, or would

---

defect" (735 ILCS 5/2-621(c)(2)), but also gave the manufacturer "warnings … relative to the alleged
defect" (735 ILCS 5/2-621(c)(1)), within the meaning of the exceptions to the Seller's Exception Statute.
*See Kopitke*, 2011 WL 856865, at *3. Similarly, in *Cochran*, the complaint specifically alleged not only
that the distributor defendant had "actual knowledge of the alleged defect in the medical device that
caused [the plaintiff's] injuries," but that it also "*provided warnings* to [the manufacturer] about the
alleged defects."   *Cochran v. Smith & Nephew Inc.*, No. 16-1121, 2016 WL 4923505, at *4 (C.D. Ill.
Sep. 15, 2015 (emphasis added)).    There is, of course, no similar allegation here.

have smoked less, or would have stopped sooner, and that he was injured "[a]s a direct and proximate result of the [] negligen[ce]" and "aforementioned defects" vaguely described in the Complaint. *See* Compl. ¶¶ 187, 188 (negligence); *see also id.* ¶ 192 (strict liability). These are exactly the type of conclusory allegations that courts routinely reject as legally insufficient. While Plaintiff's conclusory allegations suggest Walgreens' act of selling cigarettes somehow contributed to Plaintiff's injuries, Plaintiff fails to plead any *specific* facts as to how he would have avoided his injuries. As examples, Plaintiff does not allege: (1) when he bought cigarettes from Walgreens; (2) how often he bought cigarettes from Walgreens; (3) how many cigarettes he bought from Walgreens; or (4) what percentage of his cigarettes came from Walgreens, as opposed to another retailer. In short, Plaintiff alleges no specific facts showing that Walgreens' conduct played any role in causing his injuries, much less how "absent [Walgreens'] conduct, the injury would not have occurred." *Krywin*, 938 N.E.2d at 447. Without such facts, Plaintiff has no reasonable possibility of establishing proximate cause.

> **4.     Any Claim That Walgreens Breached A Duty To Warn About The Health Risks Of Smoking After 1969 Or Should Have Stopped Selling Cigarettes Is Preempted Under Federal Law.**

51.     Plaintiff's claims against Walgreens also fail because they are preempted by federal law. Any claim that Walgreens should have provided warnings to Plaintiff—in addition to or different from the warnings already on the cigarette packs since 1969 (*see* Compl. ¶ 167 (alleging Walgreens "only recently began disclosing its superior knowledge to the public") and *see* Compl. ¶ 191 (suggesting liability based on failure to warn of known risks))—is preempted by federal law. *See* 15 U.S.C. §§ 1333, 1334(b). Failure to warn claims are expressly preempted by the Federal Cigarette Labeling and Advertising Act ("the Labeling Act"). *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 524 (1992) (plurality op.); *see also Altria Group Inc. v. Good*,

555 U.S. 70, 84-85 (2008) (adopting the preemption framework applied by the plurality in *Cipollone*).[17] Likewise, Plaintiff's suggestion that Walgreens is liable because it failed to stop selling cigarettes altogether (*see* Comp. ¶¶ 181-184) is also preempted. *See* 15 U.S.C. § 1334(b); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 137-38 (2000) ("Congress . . . foreclosed the removal of tobacco products from the market.").

*     *     *

52. Accordingly, because Plaintiff is an Illinois citizen, and because none of the properly joined Defendants is an Illinois citizen, there is complete diversity of citizenship. *See* 28 U.S.C. § 1332(a).

## II. THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

53. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553. In determining whether the amount in controversy is satisfied, the Court may consider compensatory as well as punitive damages. *See, e.g.*, *LM Ins. Corp. v. Spaulding Enterprises Inc.*, 533 F.3d 542, 551 (7th Cir. 2008); *see also Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011) ("the litany of injuries" claimed by plaintiff in his complaint, including personal injuries which are "permanent and lasting in nature," pain and suffering, and the need for future and ongoing medical treatment, "makes clear that [plaintiff] is seeking damages in excess of $75,000"); *cf. Oshana v. Coca-Cola*

---

[17] Significantly, Plaintiff did not begin smoking until 1971 (*see* Compl. ¶ 3), so there can be no claim that Walgreens owed Plaintiff a duty to warn prior to the effective date of the Labeling Act.

*Co.*, 472 F.3d 506, 513 (7th Cir. 2006) ("Whether [plaintiff] *actually* recovers more than $75,000 is immaterial; what matters is the amount put in controversy on the day of the removal" (emphasis added)).

54.     Here, Plaintiff asserts that he has incurred losses "in excess" of fifty thousand dollars each associated with his "laryngeal cancer, in addition to other related physical conditions which resulted in and directly caused him to suffer severe bodily injuries." *See* Compl. ¶¶ 9-10, 65.

55.     It is thus clear that the alleged amount in controversy exceeds $75,000, exclusive of interest and costs.

## III.     <u>ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED</u>

### A.     **Manufacturer Defendants' Notice Of Removal Is Timely Filed**

56.     Manufacturer Defendants' Notice of Removal is timely filed.  R.J. Reynolds Tobacco Company and Philip Morris USA Inc. were served with the Complaint on January 22, 2021.  Liggett Group LLC was served with the Complaint on January 21, 2021.  Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served on the Manufacturer Defendants is attached hereto as Exhibit 12.  A copy of the state court docket is attached hereto as Exhibit 13.  Because the Manufacturer Defendants are filing the Notice of Removal on February 19, 2021, within 30 days of the date on which the Manufacturer Defendants were served with the summons and copy of the Complaint, removal is timely.  *See* 28 U.S.C. § 1446(b)(1).

### B.     **All Properly Joined And Served Defendants Consent To Removal**

57.     Per 28 U.S.C. § 1446(b)(2)(A), all Defendants who were properly joined and served in this action consent to removal, as indicated by their signing below.  Walgreens need

not consent as it is not properly joined in this action. *See Midland Mgmt. Co. v. Am. Alternative Ins. Corp.*, 132 F. Supp. 3d 1014, 1024 (N.D. Ill. 2015).

58.     By filing this Notice of Removal, the Manufacturer Defendants do not waive any defense that may be available to them; instead, they reserve all such defenses.  If any question arises as to the propriety of removal to this Court, Manufacturer Defendants request the opportunity to present a brief and oral argument in support of their removal.

59.     Per 28 U.S.C. § 1446(d), the Manufacturer Defendants will promptly serve upon Plaintiff's counsel and file with the Circuit Court of Cook County, Illinois, a true and correct copy of this Notice of Removal.

## **CONCLUSION**

WHEREFORE, the Manufacturer Defendants hereby remove this action from the Circuit Court of Cook County to the United States District Court for the Northern District of Illinois.

Dated: February 19, 2021

Respectfully submitted,

/s/ *José A. Isasi, II*
José A. Isasi, II
Jihan E. Walker
JONES DAY
77 West Wacker Drive
Chicago, IL 60601-1692
(312) 269-4083
Email: jisasi@jonesday.com
Email: jihanwalker@jonesday.com

*Attorneys for Defendant R.J. Reynolds Tobacco Company*

-and-

/s/ *Caitlin Martini Mika*
Daniel M. Meyers
Caitlin Martini Mika
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, Illinois 60602

(312) 583-2300
Email: daniel.myers@arnoldporter.com
Email: caitlin.mika@arnoldporter.com

Keri L. Arnold
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
Email: keri.arnold@arnoldporter.com

*Attorneys for Defendant Philip Morris USA Inc.*

-and-

/s/ *Stephanie Scharf*
Stephanie Scharf
George D. Sax
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
(312) 662-6999
Email: sscharf@scharfbanks.com
Email: gsax@scharfbanks.com

Kelly Anne Luther
Maria Ruiz
KASOWITZ BENSON TORRES LLP
1441 Brickell Avenue, Suite 1420
Miami, FL 33131
(786) 587-1045
Email: kluther@kasowitz.com
Email: mruiz@kasowitz.com

*Attorneys for Defendant Liggett Group LLC*

## CERTIFICATE OF SERVICE

I, José A. Isasi, II, one of the attorneys for Defendant R.J. Reynolds Tobacco Co., hereby

certify that I caused the foregoing **DEFENDANT R.J. REYNOLDS TOBACCO COMPANY,**

**PHILIP MORRIS USA INC., AND LIGGETT GROUP LLC's NOTICE OF REMOVAL** to

be filed through the CM/ECF system of the United States District Court for the Northern District

of Illinois and served by electronic mail on the following:

Craig D. Brown
Peter J. Flowers
Gladys Proa Santana
Jonathan Peter Mincieli
Maryse Puttkammer
MEYERS & FLOWERS, LLC
3 North Second Street
Suite 300
St. Charles, IL 60174
Phone: (630) 232-6333
Email: cdb@meyers-flowers.com
Email: pjf@meyers-flowers.com
Email: gps@meyers-flowers.com
Email: jpm@meyers-flowers.com
Email: mcp@meyers-flowers.com

Chicago Office:
225 W. Wacker, Suite 1515
Chicago, IL 60606
Phone: (877) 221-2511

***Attorneys for Plaintiff***

José A. Isasi, II
Jihan E. Walker
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, IL 60601-1692
Phone: (312) 782-3939
Email: jihanwalker@jonesday.com
Email: jisasi@jonesday.com

***Attorneys for R.J. Reynolds Tobacco Co. and
Walgreen Co.***

Stephanie Scharf
George D. Sax
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Phone: (312) 726-6000
Email: sscharf@scharfbanks.com
Email: gsax@scharfbanks.com

-and-

Kelly Anne Elizabeth Luther
Maria H. Ruiz
KASOWITZ BENSON TORRES LLP
1441 Brickell Avenue, Suite 1420
Miami, FL 33131
Phone: (305) 377-1666
Email: kluther@kasowitz.com
Email: mruiz@kasowitz.com

***Attorneys for Liggett Group LLC***

on this 19th day of February, 2021.

                                        */s/ José A. Isasi*
                                        José A. Isasi